UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMBERLY LONGLEY,

                                 Plaintiff,

                                                                                        DECISION AND ORDER

                                                                                        19-CV-6278L

                    v.

ANDREW SAUL,
Commissioner of Social Security,

                                 Defendant.
_____

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On June 1, 2015 plaintiff filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act, and for supplemental security income benefits under Title XVI of the Act, alleging disability beginning December 3, 2014. (Dkt. #5-2 at 13).[1] Her application was initially denied. Plaintiff requested a hearing, which was held on January 26, 2018 before Administrative Law Judge ("ALJ") Connor O'Brien. *Id*. The ALJ issued an unfavorable decision on May 2, 2018, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #5-2 at 13-25). That decision became the final decision of the Commissioner when the Appeals Council denied review on February 8, 2019. (Dkt. #5-2 at 1-3). Plaintiff now appeals.

---

[1] References to page numbers in the Administrative Transcript utilize the internal Bates-stamped pagination assigned by the parties.

1

The plaintiff has moved for judgment remanding the matter for further proceedings, and the Commissioner has cross moved for judgment dismissing the complaint, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, plaintiff's motion (Dkt. #17) is granted, the Commissioner's cross motion (Dkt. #22) is denied, and the matter is remanded for further proceedings.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§ 404.1509, 404.1520. Where, as here, a claimant's alleged disability includes mental components, the ALJ must apply the so-called "special technique" in addition to the usual five-step analysis. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

Upon reviewing the record, the ALJ determined that the plaintiff had the following severe impairments: fibromyalgia, irritable bowel syndrome, Raynaud's Syndrome, recurrent migraines, affective disorder, and anxiety disorder. The ALJ also considered the effect of certain non-severe impairments (substance abuse in remission, keratoconus causing poor vision in the right eye) on plaintiff's ability to function.

In applying the special technique to plaintiff's mental impairments, the ALJ determined that plaintiff has mild limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence and pace; and mild limitations in adapting and managing herself.

The ALJ found that plaintiff was capable of performing sedentary work, with the following abilities and limitations: requires a sit/stand option that allows for changing position every 60 minutes for up to 5 minutes; can occasionally stoop, crouch, balance, climb, kneel, crawl, push and/or pull; can tolerate only occasional exposure to extreme cold or more than moderate noise; and requires three additional short, less-than-five-minute breaks in addition to regularly scheduled breaks. Plaintiff can adjust to occasional changes in the work setting and make simple work-related decisions. She can perform simple and detailed tasks, but not complex tasks, and can have no interaction with the public or perform tandem or teamwork. She can work toward daily goals, but cannot maintain a fast-paced production pace. (Dkt. #5-2 at 17).

When presented with this RFC determination at plaintiff's hearing, vocational expert Peter A. Manzi testified that plaintiff could not return to her past relevant work as a sales manager, mental retardation aide, and/or home health aide. However, she could perform the representative sedentary positions of table worker and addresser. (Dkt. #5-2 at 23-24).

Plaintiff contends that the Appeals Council failed to properly evaluate medical evidence that was submitted after the ALJ's decision, and that the ALJ's decision is based on legal error and is not supported by substantial evidence, because the ALJ failed to properly determine plaintiff's severe impairments, evaluate the opinions of plaintiff's treating physicians or appropriately assess plaintiff's credibility. The Commissioner argues that the post-decision evidence was properly

rejected, that the ALJ committed no legal error, and that substantial evidence in the record exists to support her determination that plaintiff is not disabled.

### III.     Post-Decision Evidence

Initially, plaintiff alleges that the Appeals Council erred when it found that certain medical evidence that was submitted after the ALJ's unfavorable decision was not material, in that it was unlikely to "change the outcome of the decision." (Dkt. #5-2 at 2).

In assessing an appeal, the Appeals Council must review all evidence in the administrative record, as well as any additional evidence submitted thereafter that is new, material and relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. §416.1470(b); §416.1476(b)(1). *See generally Hollinsworth v. Colvin*, 2016 U.S. Dist. LEXIS 139154 at *10 (W.D.N.Y. 2016). Here, the records submitted by plaintiff to the Appeals Council included medical records dated December 15, 2017 through May 16, 2018, reflecting, inter alia, emergency treatment for a flare-up of preexisting lower back pain following an injury. (Dkt. #5-2 at 34-255).

Plaintiff also requests remand for the purpose of considering additional post-decision evidence, which was not submitted to the Appeals Council but is offered by plaintiff in support of the instant motion. That evidence includes: (1) a November 16, 2018 MRI of plaintiff's lower back, demonstrating disc protrusions and a Synovial cyst at L5-S1, with moderate to severe right foraminal stenosis and compression of the nerve root; and (2) medical records showing that plaintiff underwent a lumbar decompression of L5-S1 on December 12, 2018 which resolved pre-existing radicular pain in her right leg and caused gradual improvement in her back pain. (Dkt. #17-3).

The Court "may remand for the purpose of ordering the Commissioner to take additional evidence into account, but only 'upon a showing that there is new evidence which is material and

that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding . . .'" *Carter v. Colvin*, 2015 U.S. Dist. LEXIS 116180 at *25-*26 (E.D.N.Y. 2015) (quoting 42 U.S.C. § 405(g)). The Second Circuit has developed a three-part test for the inclusion of such evidence. A plaintiff must show: (1) that the proffered evidence is new and not merely cumulative of what is already in the record; (2) that the proffered evidence is material, that is, probative and relevant to the time period under review; and (3) good cause for her failure to present the evidence earlier. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

Concededly, the evidence rejected by the Appeals Council, as well as the "new" evidence, is cumulative to the extent that it pertains to a pre-existing issue of back pain and sciatica which was already mentioned in the record before the ALJ. Nonetheless, I find that remand for consideration of that evidence is appropriate here, particularly given that it provides objective confirmation (via imaging studies) of an impairment that the ALJ not only didn't find to be severe, but did not discuss at all. *See e.g.*, Dkt. #5-2 at 278-79 (plaintiff's testimony at her hearing that she has suffered from lower back issues for 20 years which have flared up at times, diagnosed as degenerative disc disease and foraminal stenosis at L5-S1); Dkt #5-7 at 694-97 (September 8, 2015 consultative examination with Dr. Toor, including complaints of dull achy pain, sometimes sharp, radiating into the right leg, and objective findings of decreased spinal motion, positive straight leg raising tests, and diagnosis of degenerative disc disease); Dkt. #5-7 at 721-24 (July 13, 2015 progress note regarding acute back pain after exacerbation of "chronic low back problems" that began 16 years prior); Dkt. #5-7 at 880 (August 27, 2015 treatment note describing "long history of low back pain," treated with facet blocks and epidurals, pain "sporadic with increasing right sciatica," diagnosed as lumbar degenerative disc disease with right radicular low back pain).

Because the impact, if any, of plaintiff's back pain and sciatica on her ability to perform work-related functions was not specifically assessed by the ALJ, it is unclear to what extent the ALJ seriously considered plaintiff's diagnoses of degenerative disc disease, foraminal stenosis and/or radiculopathy in identifying the severity of plaintiff's impairments and making her RFC determination. *See Campbell v. Colvin*, 2014 U.S. Dist. LEXIS 179371 at *35-*36 (N.D.N.Y. 2015) (remand is appropriate where new and material evidence further validates a diagnosis which was mentioned in the record, but which the ALJ "apparently overlooked").

Furthermore, despite the fact that the new evidence submitted by plaintiff in support of the instant motion was generated several months after the ALJ's decision (which explains and excuses plaintiff's failure to include it in the original record), it documents spinal issues that typically arise by slow, degenerative processes, and as such is probative of plaintiff's condition during the period under the ALJ's consideration. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing, particularly where the evidence suggests that during the relevant time period, a claimant's condition was more serious than previously thought); *Lisa v. Secretary of Dep't of Health and Human Serv.*, 940 F.2d 40, 44 (2d Cir. 1991) (evidence bearing on an applicant's condition subsequent to the date last insured is pertinent, in that it may disclose the severity and continuity of impairments existing before that date).

In short, because the post-decision evidence concerning plaintiff's lumbar degenerative disc disease with right side radicular pain is material and relevant, and provides objective support for subjective complaints of pain as well as medical opinions (discussed below) that the ALJ declined to credit, remand for consideration of the severity and impact of plaintiff's spinal issues in general, and the post-decision evidence in particular, is appropriate.

**IV.     Opinions By Plaintiff's Treating Physicians and Other Sources**

Plaintiff also challenges the ALJ's rejection of the opinions of her treating physicians.

A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings, and is not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). *See also Lewis v. Colvin*, 2014 U.S. Dist. LEXIS 165488 at *9-*10 (W.D.N.Y. 2014) (collecting cases, and noting that the treating physician rule applies equally to opinions cosigned by a treating physician). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 20 C.F.R. §419.1527(c). Where an ALJ fails to apply these factors and provide good reasons for the weight given to the treating physician's report, remand is required. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Morris v. Colvin*, 2016 U.S. Dist. LEXIS 184030 at *29 (E.D.N.Y. 2016).

Plaintiff's treating psychiatrist, Dr. Syed Mustafa, rendered an opinion on June 1, 2015, based on four months of treatment. Dr. Mustafa opined that due to symptoms of major depressive disorder, panic disorder and substance abuse disorder in full sustained remission, and in addition to a number of milder limitations, plaintiff was severely limited in the ability to understand and remember complex instructions. (Dkt. #5-7 at 867-68). On September 22, 2015, after a full year of treatment with visits every 2 weeks, Dr. Mustafa opined that in addition to several mild or moderate limitations, plaintiff was severely limited in the ability to maintain attention and concentration. (Dkt. #5-7 at 869-70).

Treating psychiatrist Dr. Jessica Norton authored an opinion on October 21, 2016, based on a fourteen-month treatment history. Dr. Norton found that due to symptoms of PTSD and bipolar disorder, plaintiff was severely limited in the ability to understand and remember complex instructions, maintain attention and concentration, and use public transportation. (Dkt. #5-7 at 1029-30).

The ALJ afforded each of these opinions "some" weight, reasoning that the forms were check-box in nature, and that two of the marked limitations they suggested (maintaining attention and concentration and using public transportation) were undermined by plaintiff's ability to live independently and manage her own money. (Dkt. #5-2 at 22-24).[2]

These are not "good reasons" for discounting the opinions of plaintiff's treating psychiatrists. Initially, the mere use of checkbox forms does not furnish sufficient reason to discount the opinions of treating sources, particularly where, as here, the forms were accompanied by treatment records. (Dkt. #5-7 at 700-703, 1036-42). *Accord Puckhaber v. Berryhill*, 2019 U.S. Dist. LEXIS 47928 at *10-*11 (W.D.N.Y. 2019) (ALJ's rejection of treating source statement due to its check-box format was improper: if ALJ felt the questionnaire was insufficiently supported, he should have recontacted the physician for clarification).

Furthermore, although a claimant's activities of daily living are properly considered by an ALJ as "part of a holistic calculus" in determining a claimant's abilities, *Freund v. Berryhill*, 2019 U.S. Dist. LEXIS 49535 at *39 (S.D.N.Y. 2019), "it is well-settled that [s]uch activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 69

---

[2] The ALJ did credit the opinions to the extent they listed marked limitations in understanding and remembering complex instructions, and included a corresponding restriction in her RFC finding to "simple and detailed tasks, but not complex tasks." (Dkt. #5-2 at 17).

(N.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). *See also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[w]e have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act"). Thus, where an ALJ concludes that a claimant's activities of daily living are inconsistent with a medical opinion, the ALJ is required to explain how the claimant's activities exceed the limitations described in the opinion: conclusory statements of inconsistency are insufficient. *See McCall v. Colvin*, 2017 U.S. Dist. LEXIS 22250 at *42 (W.D.N.Y. 2017) (ALJ failed to sufficiently explain the basis for rejecting a medical opinion, where the ALJ stated in conclusory fashion that it was "inconsistent" with the claimant's activities of daily living and treatment); *Taylor v. Astrue*, 2009 U.S. Dist. LEXIS 66671 at *14-*15 (W.D.N.Y. 2009) (ALJ's rejection of treating physician opinions based on inconsistencies with activities of daily living was improper, where "nothing about [plaintiff's self-reported daily activities] contradicts the treating physicians' [opinions concerning her limitations]").

Here, there is no obvious contradiction between the ability to live alone and manage one's finances, and marked limitations in areas such as attending and concentrating and using public transportation, and the ALJ provided no other or further explanation for her rejection of Dr. Mustafa's and Dr. Norton's opinions. Because the ALJ's analysis improperly substituted "her own view of [the plaintiff's] ability to perform simple activities of daily living" for competent medical opinion, remand is required. *Kane v. Astrue*, 2012 U.S. Dist. LEXIS 140743 at *46-*47 (W.D.N.Y. 2012).

While the opinions of non-treating sources are not entitled to the same level of deference as those of treating physicians, the Court observes that the ALJ's explanation for rejecting the opinions of the consulting and examining physicians of record was similarly deficient.

For example, plaintiff was examined by consulting internist Dr. Harbinder Toor on September 8, 2015. Dr. Toor found that plaintiff had difficulty walking heel-to-toe, with 50% squat, significantly decreased lumbar spinal flexion, positive straight leg raising tests, and fibromyalgia trigger points in multiple areas. He opined "moderate to marked" limitations in standing, walking, bending and lifting, and moderate limitations in sitting and performing tasks that require visual acuity, and noted that pain and migraine headaches could interfere with a routine. (Dkt. #5-7 at 694-700). The ALJ gave Dr. Toor's opinion "some" weight, finding his use of the term "moderate to marked" to be vague, and explaining that "the claimant's activities" including showering, dressing, microwaving meals, caring for a puppy, engaging in arts and crafts, and helping others with gardening, and her "response to care" – specifically, an August 11, 2017 treatment note in which plaintiff reported being "stable' on her medications – contradicted Dr. Toor's opinion and supported the lower level of limitation contained in her RFC finding. (Dkt. #5-2 at 20, #5-9 at 1474).

On January 17, 2018, examining physical therapy specialist Dr. Matthew Kerns evaluated plaintiff for right-sided low back pain with radicular pain into her right leg. He determined that her "reports of discomfort and pain were consistent with the objective findings during functional testing." Based on a complete orthopedic examination and the results of an objective functional test (e.g., Modified Oswestry Low Back Pain Test), Dr. Kerns opined that plaintiff requires "consistent changing from sitting to standing positioning approximately every 10 minutes," and could occasionally lift 2 pounds (or 4 pounds overhead), and carry 8 pounds, with no more than occasional forward bending, working overhead, standing, gripping or side reaching. (Dkt. #5-9 at 1606-15). The ALJ gave "some" weight to Dr. Kerns's opinion, finding that the lesser degree of limitation contained in her RFC finding (which allowed for lifting and carrying of up to ten pounds,

and changing position for 5 minutes every 60 minutes) was more "consistent with [plaintiff's] activities, response to care, and the nature of treatment." (Dkt. #5-2 at 21).

As with her assessment of the opinions of treating physicians, the ALJ's reasons for rejecting Dr. Toor's opinion indicating moderate and moderate to marked limitations in visual acuity, sitting, standing, walking, bending, and lifting, and Dr. Kerns's opinion specifying significant postural and exertional limitations, are insufficient. The fact that plaintiff was able to occasionally perform tasks of daily living such as microwaving meals, crafting for an hour or two per week, or helping others with gardening for a time, do not present any obvious conflict with the physical limitations described by Dr. Toor and Dr. Kerns. Specifically, none of the activities plaintiff described necessarily require full visual acuity, the ability to lift more than 2 pounds or carry more than 8 pounds, or a need to remain seated or standing for 10 or more minutes at a time. *See Taylor*, 2009 U.S. Dist. LEXIS 66671 at *14-*15.

Furthermore, plaintiff's August 11, 2017 report to her general practitioner that she was "stable" referred to her *mental* health symptoms, and as such, the ALJ's reliance upon it to discredit the consulting physicians' opinions concerning plaintiff's *physical* limitations was misplaced. (Dkt. #5-9 at 1474: "Patient presents with Anxiety / PTSD / Medication Refill . . . Pt. says she is stable on her meds, for now, though she still sleeps 3-4 hours. She is very busy, with her art and craft work, she helps others with gardening, likes to work outside . . . anxiety off and on  . . . still dreams, has nightmares, sometimes paranoid . . . becomes tense, nervous and has . . . panic like symptoms").

In sum, because I find that the ALJ's failure to adequately assess the medical opinions of record resulted in an RFC determination that was not supported by substantial evidence, and

because this is not a case where the record contains such persuasive proof of disability that remand would serve no purpose, remand for further proceedings is necessary.

Since I find that remand is otherwise warranted, I decline to reach the remainder of plaintiff's contentions. *See generally Siracuse v. Colvin*, 2016 U.S. Dist. LEXIS 34561 at *27 (W.D.N.Y. 2016).

## CONCLUSION

For the reasons set forth above, the Commissioner's cross motion for judgment on the pleadings (Dkt. #22) is denied. Plaintiff's motion for judgment on the pleadings (Dkt. #17) is granted, and the matter is remanded for further proceedings consistent with this opinion, to include the rendering of a new decision based on consideration of the entire record (including post-decision medical evidence submitted by plaintiff, Dkt. #17-3, to the extent that it is probative of, and relevant to, plaintiff's condition during the period under review), and reassessment of all of the medical opinions of record, including a detailed application of the treating physician rule to the opinions of treating physicians.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 15, 2020.